## SALKELD et ux. v. DAVIS.

Court of Appeals of Kentucky.
March 28, 1952.

Mapother, Mix & Morgan and H. S. Keeling, all of Louisville, for appellants.

George B. Ryan, Louisville, for appellee.

COMBS, Justice.

Stanley Davis, appellee here, bought a dry cleaning establishment from Marion P. Salkeld, one of the appellants, on May 1, 1946. The agreed purchase price was $1,425, of which $1,125 was paid in cash, and a note for $300 due 90 days thereafter executed for the balance. The note was secured by a chattel mortgage on the dry cleaning equipment. The note was not paid when due and Salkeld refused to accept a renewal.

There is no conflict in the testimony to this point. Beyond this point, the parties are in complete disagreement, not only as to the important facts, but also about the slightest details. Appellants contend that

when the note matured and a renewal note was refused, Davis abandoned the property. He contends he was forced out of his business by the appellants, who appropriated it for themselves.

We think the following facts are established with reasonable certainty: The dry cleaning business was located on Vermont Avenue in Louisville. Marion Salkeld's wife, Alice, the other appellant here, owned an interest in the business. Marion's brother, Arthur, not a party to this appeal, operated a shoe repairing and hat blocking business in the rear of the storeroom where the cleaning plant was located. Marion Salkeld held a one-year lease on the storeroom which contained a clause prohibiting subleasing, the expiration date of the lease being October 25, 1946. For some reason, unexplained in the record, Davis accepted a lease on a portion of the storeroom from Arthur Salkeld, who not only had no color of right to possession, but, under the terms of Marion's lease, was a technical trespasser himself. Although Marion's lease, which was the only claim any of the parties had to possession of the building, expired the following October, the lease from Arthur to Davis was for a purported term of one year from April 29, at a monthly rental of $15. Marion Salkeld executed and delivered to Davis a bill of sale for the dry cleaning business. The instrument was not notarized, contained the signature of only one witness, and the county court clerk refused to admit it to record.

Davis embarked on his duties as proprietor of the dry cleaning business and Arthur continued to conduct his shoe repairing and hat blocking enterprise in the same premises. We have no criterion as to the success of Arthur's enterprise, but Davis' business did not flourish. Furthermore, discord soon developed between the dry cleaner and the hat blocker. Complaining of the loss of certain articles from the storeroom, Arthur changed the lock on the door. Davis thereafter was admitted to the premises by courtesy of Arthur's daughter, who kept the key to the new lock. It does not appear, however, that Davis was ever actually refused admittance. Davis and Arthur had other disagreements, the most serious of which seems to have occurred because of the failure of Davis to install an exhaust pipe and provide fans to meet Arthur's specifications. It is impossible to determine the comparative fault of the parties in regard to this particular controversy. This was the state of affairs, however, on August 1 when Davis' note became due and Marion refused an extension. According to Davis, Arthur then refused to accept further payment of rent on the storeroom and refused to permit him to enter the premises. In any event, Davis exercised no more control over the business or equipment, and Arthur took charge.

On October 3 Davis' attorney notified Marion and Arthur Salkeld by letter that Davis still claimed the business. The letter was ignored and the dry cleaning business, together with the shoe repairing and hat blocking business, was sold to Herman Weiner for "around $2200." It is admitted that Weiner was an innocent purchaser and that Davis had no advance notice of the sale.

Davis filed suit against the brothers Salkeld, Herman Weiner, and Alice Salkeld, wife of Marion, on January 8, 1947, and subsequently filed two amended petitions. The petition as amended sets out, in substance, the facts which have been summarized above. The prayer is for $1425, the amount of the purchase price paid and assumed by Davis, and $45, the amount of the rent paid by him during the three months he occupied the premises.

The case finally came to trial on May 4, 1950, and by agreement was tried by the judge without the intervention of a jury. The court rendered judgment for Davis in the amount of $1,425 against Marion Salkeld, Alice Salkeld, and Arthur Salkeld. It appears from an affidavit of Davis' counsel that the trial judge informed the Salkelds that the judgment would be credited in the amount of $300 (this being the amount of the note for the balance of the purchase price which was not paid) upon return of the note to Davis, or execution

of a bond in that amount to protect him from collection of the note by a holder in due course.

Appellants contend Davis failed to prove his charges of fraud and conspiracy; that the Salkelds had a legal right to take possession of the dry cleaning equipment under the terms of the chattel mortgage; that the action is based on tort, and there is no evidence of damages; that Marion Salkeld's attorney failed to notify him of the trial date, and by reason thereof he was not adequately represented at the trial of the case.

■ We think it is established by the evidence that the Salkelds dealt unfairly with Davis. Their actions, when considered together, establish a pattern of conduct which impels the inference they intended to cheat and defraud him. Commencing with the execution of a void lease by Arthur, and ending with repossession and sale of the equipment by both the brothers, it is apparent that Davis was over-reached. There is no escape from the conclusion that Arthur and Marion worked in close affinity in all their dealings with Davis, and it is shown that Marion not only was present and acquiesced in the sale of the equipment to Weiner, but received part of the proceeds. Although the Salkelds had the right under the terms of their chattel mortgage to repossess the equipment, if this could be done in a peaceable manner, they had no legal right to dispose of the equipment without notice to Davis. Commercial Credit Co. v. Cooper, 246 Ky. 513, 55 S.W.2d 381. Their profession of good faith in regard to this transaction is unconvincing in light of the fact that Davis' attorney notified them of his claim prior to the sale to Weiner. Their arbitrary conduct in this respect reflects its shadow and beclouds the other transactions which, standing alone, might be subject to explanation.

■■ Appellants argue very forcefully that Davis' case, as stated in his pleadings, is based on tort, and that there is no competent evidence upon which to base the measure of damages. It is true the pleadings state a cause of action based on tort, and there is no evidence fixing the value of the property at the time it was appropriated by the Salkelds, which ordinarily would be the measure of damage to Davis. But we think the petition also states a cause of action on unjust enrichment, or money had and received without consideration, and for which the law implies a promise to repay. It is apparent the trial judge accepted this theory of the case, as evidenced by the fact the judgment is for the amount of the purchase price Davis agreed to pay for the property. We have held that a claim of this nature can be maintained as a common law action of assumpsit. Tidwell v. O'Bryan's Adm'r, 297 Ky. 749, 181 S.W.2d 260. We conclude, therefore, that the pleadings and the evidence support the judgment.

■ We are not impressed with the argument of Marion Salkeld that due to the failure of his attorney to notify him of the trial he did not have adequate legal representation. It is disclosed by the record that Marion and Arthur employed separate attorneys, but it appears that Marion's attorney retired from active practice before the case was finally tried and was not present at the trial. Arthur's attorney, Mr. James H. Polsgrove, was present during the trial of the case and the proceedings of the trial show that he represented all the Salkelds. There was no conflict in interest between them, and no reason why one attorney should not have represented all of them, as was actually done. We think all the parties had adequate legal representation.

■ It is established that Alice Salkeld was a partner with her husband in the business sold to Davis and there is nothing to show she did not receive her part of the proceeds from the sale. The evidence is sufficient, therefore, to support the judgment as to her.

■ Davis, of course, is not entitled to recover more than the amount paid by him to the Salkelds, towit, $1125, and appellants insist the judgment is excessive to the extent that it allows recovery for the note which was executed by Davis but not paid. According to Marion, the note has been lost and cannot be returned. Since it is a negotiable instrument, it is possible that it might later be collected by a holder in due

course. If the note is returned to Davis, the judgment should be credited in the amount of $300; or, if an indemnity bond is executed to secure him against collection of the note, the judgment should be credited in the same amount. If the note is not returned and bond is not executed, the amount of the judgment is correct.

The judgment is affirmed, subject to the conditions above stated.